UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                 PLAINTIFF

CRIMINAL NO. 3:19-CR-59-GNS
*Filed Electronically*

**IJAZ MAHMOOD**                 DEFENDANT

## UNITED STATES' SENTENCING MEMORANDUM

Pursuant to the plea agreement between the United States and defendant Ijaz Mahmood ("Mahmood"), the United States recommends that Mahmood be sentenced 6 months' imprisonment and a term of supervised release with a condition of 6 months of home incarceration under Guideline §5C1.1(d). In addition, the United States requests that Mahmood be ordered to pay restitution in the amount of $117,209.00 and be ordered to forfeit $6,720.00 currently in the possession of the United States Marshal Service.

The United States does not intend on calling any witnesses at the sentencing hearing. Further, the United States is not aware of any victims who want to speak at sentencing. If any victim expresses a desire to speak at sentencing, the United States will inform the Court and defense counsel.

## I. PLEA AGREEMENT

On August 26, 2021, Mahmood pled guilty to Counts 2 and 6 of the Superseding Indictment. (Plea Agreement, DN 78). Count 2 charged Mahmood with health care fraud in violation of Title 18 U.S.C. § 1347. (*Id.*). Count 6 charged Mahmood with a conspiracy to illegally use a DEA registration number issued to another in violation of Title 21 U.S.C. §§ 843(a)(2) and 846. (*Id.*).

Under the Plea Agreement, which was made pursuant to Rule 11(c)(1)(A) and (B), the United States agreed to recommend a sentence of 6 months imprisonment and a term of supervised release with a condition of 6 months of home incarceration under Guideline §5C1.1(d) as the appropriate disposition of this case.[1] (Plea Agreement, DN 78 at ¶11). The United States further agreed to move for dismissal of the original Indictment, and Counts 1, 3, 4, 5, and 7-12 of the Superseding Indictment with respect to Mahmood. (*Id.*). In addition, Mahmood agreed to pay restitution in the amount of $117,209.00. (*Id.*). Mahmood agreed to forfeit United State currency in the amount of $6,720.00 currently in the possession of the United States Marshal Service. (*Id.*). The parties stipulated that the loss amount of loss involved in this case was $117,209.00. (*Id.*).

## II. OFFENSE CONDUCT

The United States agrees with the underlying offense conduct specific to Mahmood, as set forth in the United States Probation Office's ("USPO") final Presentence Investigation Report ("PSR"). (PSR, DN 97 at ¶¶ 25-34).

*Health Care Fraud*

Beginning in 2011, Mahmood owned and operated Ijaz Mahmood MD PLC located at 1239 Woodland Drive, Suite 105, Elizabethtown, Kentucky. Mahmood is listed as the sole member and registered agent. In 2015, Mahmood hired co-defendant Catherine Edmonds ("Edmonds") as the office administrator for Mahmood MD PLC. She was responsible for billing for Mahmood MD PLC, under Mahmood's instruction and supervision.

Beginning on or about September 9, 2016 and continuing through on or about March 30, 2018, Mahmood aided and abetted by others, including co-defendant Catherine Edmonds, engaged in a health care fraud scheme to unlawfully enrich himself by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare, TRICARE, Medicaid,

---

[1] Mahmood reserved the right to argue for probation and/or a departure or variance. (Plea Agreement, DN 78 at ¶ 11).

Anthem, and other commercial health care benefit programs, for services that were medically unnecessary, not eligible for reimbursement, and never provided; (b) concealing the submission of false and fraudulent claims to Medicare, TRICARE, Medicaid, Anthem and other commercial health care benefit programs; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others. (PSR, DN 97 at ¶25-33).

To perpetuate this unlawful scheme, Mahmood allowed employees, including Edmonds, who did not have sufficient medical training, to perform infusions and other medical tasks. Mahmood then billed government health care plans as though he performed the tasks, including billing for physician-only services that were required to be directly provided by Mahmood when he was not even in the office. Between 2015 and June 2018, Mahmood was largely absent from his medical clinic on Fridays (in fact, he was scheduled off) and also took frequent trips. Mahmood was the only one with a National Provider Number and the only physician at the clinic who could bill for certain services. During this time, Mahmood was paid $117,209 for claims billed for physician services, including services for patient K.M., when Mahmood was not present in the office to perform those services. (PSR, DN 97 at ¶25-33).

***Conspiracy to Unlawfully Use DEA Registration Number***

Beginning on or about June 1, 2015 and continuing through on or about February 28, 2019, Mahmood engaged in a conspiracy with his office staff, including Edmonds, wherein Mahmood pre-signed controlled substance prescriptions for his office staff, who did not have DEA registration numbers assigned to them, to use while he was away from his medical practice in order to dispense and distribute Schedule II, III, and IV controlled substances to his patients. Multiple witnesses, including office staff, confirm that prescriptions were provided to patients when Mahmood was not present, including times he was out of state or out of the country. Mahmood specifically left pre-signed blank prescriptions for this purpose. (PSR, DN 97 at ¶27). While Mahmood was traveling, his office staff, including Edmonds, issued prescriptions for

3

Hydrocodone, Oxycodone, Adderall, and Morphine, which were written on Mahmood's prescription pad. (PSR, DN 97 at ¶28).

### III. GUIDELINES CALCULATION

The United States agrees with the USPO's calculation of the total offense level of 13 as cited in the final PSR. (PSR, DN 97 at ¶¶38-58).

### IV. CRIMINAL HISTORY

The United States agrees with the USPO's calculation of Mahmood's criminal history score as 0 which results in a criminal history category I as cited in the final PSR. (PSR, DN 97 at ¶¶ 63-66).

### V. SENTENCING FACTORS

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Title 18, United States Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. Specifically, § 3553(a) directs the courts to consider the following:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>> …
>
> **(5)** any pertinent policy statement—
>> …
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

It is the position of the United States that its requested sentence of 6 months' imprisonment and a term of supervised release with a condition of 6 months of home incarceration and payment of restitution in the amount of $117,209.00 accomplishes the sentencing purposes of § 3553(a). As discussed below, the § 3553(a) factors support the United States' position.

1. **Nature and Circumstances of the Offense/History and Characteristics of the Defendant.**

Mahmood engaged in serious conduct that defrauded health care benefit programs and endangered his patients. As outlined above, when Mahmood was away from his medical office, he directed that it operate full steam ahead by permitting untrained and unqualified staff to perform medical procedures on patients and pre-signing prescription pads so that dangerous controlled substances such as Hydrocodone, Oxycodone, and Morphine could be provided to his patients in his absence. (PSR, DN 97 at ¶28). To make matters worse, the patient files were annotated as if Mahmood had provided the services and Mahmood then submitted fraudulent claims to health care benefit programs for those services performed by untrained and unlicensed staff for which he was reimbursed over $117,000. (PSR, DN 97 at ¶¶30-31). The seriousness of Mahmood's conduct should not be ignored. This was not just a financial crime perpetrated on large insurance companies. It was a crime in which patients received treatment from untrained and unlicensed staff and received prescriptions for controlled substances without the benefit of consultation from a physician.

At the same time, according to the PSR Mahmood has no juvenile or adult convictions. (PSR, DN 97 at ¶62-63). This is his first felony conviction in either state or federal court.

2. **Need for the Sentence Imposed.**

The need for punishment to deter Mahmood and other physicians from abandoning their professional responsibilities to their patients for financial gain would be served by a sentence with some jail time and a restitution payment. This sentence further recognizes the impact that such

5

crimes have on the community at large and will serve as a deterrent to others who consider committing similar types of crimes.

### 3. Kinds of Sentences Available.

Since the applicable guideline range is in Zone C of the sentencing table, the minimum term may be satisfied by (1) a sentence of imprisonment, or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention provided that at lease one-half of the minimum term is satisfied by imprisonment. (PSR, DN 97 at ¶80.).   The United States' requested sentence of 6 months' imprisonment and a term of supervised release with a condition of 6 months of home incarceration fits squarely within the guideline requirements and, furthermore, it strikes the appropriate balance of punishing Mahmood for his serious crimes and indicates the seriousness with which such crimes are viewed.

### 4. Avoidance of Sentencing Disparities.

A split sentence in this case avoids disparities among defendants in this and other cases who may be similarly situated.  Mahmood was the licensed physician in a clinic that shared his name.  (PSR, DN 97 at ¶81.).  He was the only physician in the clinic and had sole discretion in terms of its operation, including directing office staff and employees.  He used his position to conspire with his staff to distribute controlled substances to his patients under his DEA number and to unlawfully bill insurance for procedures he never performed. under his DEA number.  The recommended sentence, to include 6 months' incarceration, for Mahmood recognizes the seriousness of his crime and his specific role in that crime, accounts for his lack of criminal history, and avoids unwanted disparities among the co-defendant and other defendants who are guilty of similar crimes.

### VI. RESTITUTION

Restitution is mandatory in this case under 18 U.S.C. § 3663A for Count 2 (Health Care Fraud).  (PSR, DN 97 at ¶ 92).  The parties agree and stipulate that Mahmood shall pay restitution

in the amount of $117,209.  (Plea Agreement, DN 78 at ¶ 9).  Restitution should be ordered and made payable to the following victims:

| Victim | Amount |
|---|---|
| Tricare | $92,786 |
| Anthem | $9,821 |
| Kentucky Medicaid | $9,508 |
| Medicare | $4,032 |
| Humana | $1,062 |

An agreed order of restitution will be tendered to the Court at sentencing.

## VII. CONCLUSION

For the reasons set forth above, the United States respectfully requests the Court to apply the Sentencing Guidelines, follow the statutory directives set out in Title 18, United States Code, Section 3553(a), and impose a sentence of 6 months' imprisonment and a term of supervised release with a condition of 6 months of home incarceration under Guideline §5C1.1(d).  In addition, the United States requests that Mahmood be ordered to pay restitution in the amount of $117,209.00 and be ordered to forfeit $6,720.00.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

_____
Christopher C. Tieke
Nicole S. Elver
Joseph R. Ansari
Assistant U.S. Attorneys
717 West Broadway
Louisville, Kentucky  40202
PH:  (502) 582-5911
Christopher.tieke@usdoj.gov

7

## CERTIFICATE OF SERVICE

      I hereby certify that on November 22, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: **Andrew Sparks, Esq.**, counsel for defendant.

                                                        _____
                                                        Christopher C. Tieke
                                                        Assistant U.S. Attorney